IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KRISTINA NEVIUS<br>2912 Garfield Terrace, N.W.<br>Washington, DC 20008,<br><br>   Plaintiff,<br><br>v.<br><br>AFRICA INLAND MISSION INTERNATIONAL<br>37 Alexandra Park<br>Bristol BS6 6QB, England<br><br>SERVE: AIM U.S.A.<br>    P.O. Box 178<br>    Pearl River, NY 10965<br><br>AFRICA INLAND MISSION<br>INTERNATIONAL, INC.<br>P.O. Box 178<br>Pearl River, NY 10965<br><br>   Defendants. | Case No. _____ |

**COMPLAINT FOR SEX DISCRIMINATION, BREACH OF CONTRACT,
LIBEL, AND FOR AN ACCOUNTING OF FUNDS HELD IN TRUST**

COMES NOW Kristina Nevius, by her undersigned counsel, and for her complaint states as follows:

### Jurisdiction

1. The jurisdiction of this Court is based upon 28 U.S.C. §§ 1331 and 1332, and upon 28 U.S.C. §§ 2201 and 2202.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

3. The amount in controversy in this case exceeds $75,000.00

## The Parties

4. Kristina Nevius is an adult citizen of the United States and a resident of the District of Columbia.

5. Africa Inland Mission International (hereinafter "AIM-International") is an international Christian missionary organization with its principal headquarters in Bristol, England and, as such, is deemed a citizen thereof.

6. Africa Inland Mission International, Inc. (hereinafter "AIM-US") is a corporation registered in the State of New York.

## Facts

7. AIM-International and/or AIM-US recruit missionaries throughout the United States and have recruited missionaries, such as Ms. Nevius, from the District of Columbia on a regular basis through telephone, mail, and through sending recruiters and/or other representatives to the District of Columbia.

8. As its/their general practice with each of its/their missionaries, AIM-International and/or AIM-US, by contract, required payment from Ms. Nevius (either from her own personal funds or from funds generated by her solicitation of donors) of monthly amounts sufficient to pay for the costs of her missionary work, including, but not limited to, living expenses, food, insurance, and travel.  Furthermore, AIM-International and/or AIM-US, in accordance with its/their general practice and/or pursuant to an applicable contract, deducts 7% from all funds donated to it/them as a result of the missionary's efforts for the personal support of that missionary.

9. In accordance with its/their general practice, AIM-International and/or AIM-US require that missionaries who wish to undertake service projects requiring costs

other than their own labor (food, equipment, housing, or buildings) must, by the same means described above in Paragraph 8, obtain sufficient funds donated to AIM-International and/or AIM-US to fund the missionary's project. AIM-International and/or AIM-US then deducts and retains 10% of all such monies.

10. On or about June 1998, AIM-International and/or AIM-US formally employed Ms. Nevius by having her execute a contract of employment (the "Contract").

11. Pursuant to the Contract, AIM-International and/or AIM-US deducted 7% from all monies donated to it/them as a result of Ms. Nevius' efforts for the personal support of her missionary work ("Support Funds"). The remaining funds were to be provided to Ms. Nevius to defray her personal expenses as described in Paragraph 8, above.

12. Furthermore, AIM-International and/or AIM-US deducted and retained 10% of all monies provided by donors in support of Ms. Nevius' various service projects as a result of Ms. Nevius' efforts ("Project Funds"). The remaining funds were to be provided to Ms. Nevius to use in furtherance of her service projects.

13. The relationship and mutual obligations between AIM-International and/or AIM-US and its/their members is governed by AIM-International and/or AIM-US's Constitution, Bylaws, and Policies and Procedures (hereinafter collectively "the Policies"). Pursuant to the Policies, a member of AIM-International and/or AIM-US is entitled to both a hearing and an appeal if allegations of misconduct are made against him/her.

15. In September 1999, Ms. Nevius went to Namibia to serve her mission in a town called Grootfontein.

16. In Namibia, Ms. Nevius, in furtherance of her missionary work and with the authorization of AIM-International and/or AIM-US, established a soup kitchen to feed poor local children.

17. Initially, Ms. Nevius' missionary work was supported locally by the Apostolic Faith Mission Church (AFM).

18. AFM is a segregated church in Grootfontein composed primarily of white members, which offers separate services for black worshippers.

19. Soon after establishing the aforesaid soup kitchen, AFM advised Ms. Nevius not to bring black children to the mission which she inhabited.

20. As a result, Ms. Nevius relocated to a different area in Grootfontein, composed primarily of black residents, where she, with the authorization of AIM-International and/or AIM-US, built a home for abused, neglected, and orphaned children, which was designated as "Mark 9:37."

21. In January 2005, AIM-International and/or AIM-US appointed Mick Rineer as Director of the area in which Ms. Nevius conducted her missionary work.

22. Upon information and belief, Mr. Rineer attends AFM and is a personal friend of AFM's pastor.

23. Despite Ms. Nevius' exemplary missionary work and length of service, Mr. Rineer, after being appointed Director, made false accusations against Ms. Nevius concerning her alleged mishandling of funds as well as her alleged negligent care of the children under her supervision.

24. In addition, Mr. Rineer, acting on behalf of AIM-International and/or AIM-US, personally delivered an "eviction notice" to Ms. Nevius, demanding that she and the

children under her supervision vacate, within eight hours of said notice, the home which they inhabited.

25. Said eviction notice was given by Mr. Rineer despite the prohibition of same by Namibian law and his knowledge thereof.

26. On April 7, 2005, in the presence of others, Mr. Rineer falsely accused Ms. Nevius of stealing Mark 9:37 funds and abusing the children in her care.

27. On April 28, 2005, Ted Barnett, the Director of AIM-US, sent a letter to Ms. Nevius asserting that he had received reports of lesbian behavior, child abuse and abuse of other missionaries. He refused to disclose any specifics but demanded that Ms. Nevius return immediately to the United States. Mr. Barnett advised he would "share" the details only when she met with him and he would expect an immediate detailed response.

28. Despite the requirements of the Policies to the contrary, at no time did Mr. Barnett or any other officer or agent of AIM-International and/or AIM-US provide Ms. Nevius with notice of the alleged charges against her, give her an opportunity to confront any "evidence" or defend such charges, conduct a hearing, or otherwise investigate the allegations made against her.

29. AIM-International and/or AIM-US have continued to refuse to disclose any information regarding said accusations and/or charges and has continued to falsely state to third persons that Ms. Nevius had committed financial improprieties and had been involved in the abuse of the children under her care.

30. Upon information and belief, Mr. Rineer's motive in perpetuating the campaign of false accusations made against Ms. Nevius was to take the property and

5

improvements constructed by Mark 9:37 and turn them over to the use of AFM, which motive was both known and approved by AIM-International and/or AIM-US.

31. The pastor of AFM stated to third parties that he thought the property acquired and built by Mark 9:37 would make a good bed and breakfast, which he would personally run. This was known to and agreed to by Mr. Rineer.

32. Mr. Rineer and AFM Church were displeased that the facilities provided by Mark 9:37 were exclusively used for the support of children who were black Africans.

33. Upon information and belief, it was the purpose of Mr. Rineer, in agreement with the leaders of the church, to remove these children from the property and devote it to other uses to be determined by the leadership of the AFM Church.

34. Upon information and belief, since the children were evicted from the premises operated in their behalf by Mark 9:37, the premises has become the residence of a white South African pastor and his family, who also operate a bed and breakfast there.

35. This is a prohibited act of intentional discrimination based upon color, race and/or national origin.

36. Mr. Rineer and other agents of AIM-International and/or AIM-US in Namibia over time have made statements belittling the leadership capabilities of women Members and claiming that projects and missions must be led by male Members.

37. The acts of Mr. Rineer, which were known and approved by AIM-International and/or AIM-US, were for the purposes of removing Ms. Nevius, a white female, from leadership of Mark 9:37 and turning the property and improvements over to a white male leader, such as Mr. Rineer.

38. This is an intentional action of discrimination based upon sex.

## COUNT I
### (Breach of Contract)

39. Ms. Nevius hereby adopts and incorporates by reference the allegations of Paragraphs 1 through 38 as if fully set forth herein.

40. The actions of AIM-International and/or AIM-US, directly and by its/their agents, Mr. Rineer and Mr. Barnett, against Ms. Nevius and the children of Project Mark 9:37 constitute a breach of the terms of the Contract as well as the provisions of the Policies.

41. As a result of AIM-International and/or AIM-US's breach of contract, Ms. Nevius and the children under her care have been deprived of the benefit and use of the home which was constructed for them as a result of Ms. Nevius' efforts, the value of which exceeds $100,000.

42. Further, AIM-International and/or AIM-US refused to make available to Ms. Nevius funds that she had generated through her own donor solicitations for the continuing care of the children in Mark 9:37. On information and belief, AIM-International and/or AIM-US has wrongfully withheld funds rightfully due and owing to Ms. Nevius in the approximate amount of $37,338.00.

43. Further, AIM-International and/or AIM-US has withheld from Ms. Nevius funds given to it/them by Ms. Nevius' donors for her personal support and sustenance.

44. As a direct and proximate result of AIM-International and/or AIM-US's breach of contract, Ms. Nevius has incurred significant expenses and losses in housing herself and the children under her care and continuing to provide for their sustenance on a daily basis.

## COUNT II
### (Violation of the District of Columbia Human Rights Act)

45. Ms. Nevius hereby adopts and incorporates by reference the allegations of Paragraphs 1 through 44 as if fully set forth herein.

46. As a single white female in a foreign country, Ms. Nevius is a member of a protected class.

47. Ms. Nevius, at all relevant times of her employment by AIM-International and/or AIM-US, was fully qualified to perform the work which she was employed to perform.

48. Despite her ample qualifications, AIM-International and/or AIM-US wrongfully discharged Ms. Nevius, either expressly or constructively, and upon information and belief, treated other, similarly qualified employees that belonged to a non-protected class, differently than Ms. Nevius.

49. AIM-International and/or AIM-US's proffered reasons for discharging Ms. Nevius were false and merely a pretext for discrimination based upon color, race and/or national origin as well as sex and/or gender.

50. As a direct and proximate result of AIM-International and/or AIM-US's intentional discrimination based on color, race, national origin, sex, and/or gender, Ms. Nevius has suffered severe emotional distress and harm to her reputation and such other damages in an amount in excess of $100,000.00.

## COUNT III
### (Defamation)

51. Ms. Nevius hereby adopts and incorporates by reference the allegations of Paragraphs 1 through 50 as if fully set forth herein.

52. The accusations of financial impropriety and child abuse made by Mr. Rineer and/or Mr. Barnett, acting within the scope of their authority as agents/employees of AIM-International and/or AIM-US, were and are false.

53. Mr. Rineer and/or Mr. Barnett knew these accusations were false or, in the alternative, acted in reckless disregard as to the truth of said accusations.

54. Despite Mr. Rineer's and/or Mr. Barnett's knowledge that said accusations were false or despite their reckless disregard for the truth of said accusations, Mr. Rineer and/or Mr. Barnett published said false accusations.

55. As a direct and proximate result of the publication of said false accusations, Ms. Nevius has suffered injury to her reputation, emotional distress, humiliation, and continuing mental anguish and such other damages in an amount in excess of $100,000.00.

## COUNT IV
### (Unjust Enrichment)

56. Ms. Nevius hereby adopts and incorporates by reference the allegations of Paragraphs 1 through 55 as if fully set forth herein.

57. AIM-International and/or AIM-US knowingly received a benefit, in the form of Project Funds and Support Funds which were rightfully due and owing to Ms. Nevius.

58. Despite the fact that AIM-International and/or AIM-US continue to retain the Project Funds and Support Funds which were rightfully due and owing to Ms. Nevius, it/they have not paid Ms. Nevius for the value of said funds.

59. It is inequitable for AIM-International and/or AIM-US to retain the value of the Project Funds and Support Funds which were rightfully due and owing to Ms.

Nevius and, accordingly, represents an unjust enrichment to AIM-International and/or AIM-US.

## COUNT V
### (Conversion)

60. Ms. Nevius hereby adopts and incorporates by reference the allegations of Paragraphs 1 through 59 as if fully set forth herein.

61. AIM-International and/or AIM-US have wrongfully deprived Ms. Nevius, without her consent, of the Project Funds and Support Funds which were rightfully due and owing to her and has done so with the intent to exercise dominion or control over said funds.

62. AIM-International and/or AIM-US actually exercised dominion and control over the Project Funds and Support Funds which were rightfully due and owing to Ms. Nevius in such a manner that is inconsistent with Ms. Nevius' rights.

63. Due to AIM-International's and/or AIM-US's conversion as to the Project Funds and Support Funds which were rightfully due and owing to Ms. Nevius, she has sustained damages in the approximate amount of $37,338.00.

## COUNT VI
### (Breach of Trust and a Demand for Accounting)

64. Ms. Nevius hereby adopts and incorporates by reference the allegations of Paragraphs 1 through 63 as if fully set forth herein.

65. By accepting project and personal support funds, AIM-International and/or AIM-US acts in a fiduciary capacity both as to the donors whose intent must be followed and as to Ms. Nevius and the children beneficiaries of donations to Mark 9:37.

66. Mr. Rineer and AIM-International and/or AIM-US violated its fiduciary duty by knowingly making false and unfounded claims of financial improprieties against Ms. Nevius for the purpose of depriving Ms. Nevius and the children of Mark 9:37 of the benefit of the funds raised solely through Ms. Nevius' efforts.

67. Based upon AIM-International's and/or AIM-US's obligations to respect its donors' intent, Ms. Nevius has standing to demand an accounting of the Project Funds and Support Funds obtained for Mark 9:37 and for her personal support.

68. Furthermore, based upon the Contract and AIM-International's and/or AIM-US's fiduciary obligations to donors, AIM-International and/or AIM-US is obligated to both account for said funds and to turn over to Ms. Nevius any portion of said funds that has not been spent and any property acquired for Ms. Nevius' project, including, but not limited to, the land and improvements built for Mark 9:37 through the use of Ms. Nevius' donor funds.

WHEREFORE, for the foregoing reasons, Ms. Nevius demands:

(1) judgment against AIM-International and/or AIM-US, jointly and severally, for compensatory damages for breach of contract, in such an amount as is supported by the evidence at trial;

(2) judgment against AIM-International and/or AIM-US, jointly and severally, for compensatory damages and punitive damages for violation of the District of Columbia Human Rights Act in such amounts as is supported by the evidence at trial;

(3) judgment against AIM-International and/or AIM-US, jointly and severally, for compensatory damages and punitive damages for defamation in such amounts as is supported by the evidence at trial;

(4)   judgment against AIM-International and/or AIM-US, jointly and severally, for compensatory damages for unjust enrichment in such amounts as is supported by the evidence at trial;

(5)   judgment against AIM-International and/or AIM-US, jointly and severally, for compensatory damages for conversion in such amounts as is supported by the evidence at trial;

(6)   a declaratory judgment directing both AIM-International and AIM-US to provide a complete accounting of all donor funds generated by Ms. Nevius' efforts and directing them each to turn over all such remaining funds and title to any property and/or improvements purchased and/or built using Ms. Nevius' donors' funds to a missionary agency chosen by Ms. Nevius for the purposes of continuing the work of Mark 9:37; and

(7)   prejudgment interest, attorneys' fees, costs of this litigation, and any other relief the Court deems just and appropriate.

Respectfully submitted,

JACKSON AND CAMPBELL, P.C.

*[signature: Robert Kelly]*

Robert N. Kelly (DC Bar #287276)
James B. Travis (DC Bar #486468)
1120 Twentieth Street, N.W.
South Tower
Washington, D.C., 20036-3437
(202) 457-1600 voice
(202) 457-1678 fax
rkelly@jackscamp.com
jtravis@jackscamp.com

Counsel for Plaintiff

Dated this 16th of November, 2006

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Kristina Nevius

## DEFENDANTS
Africa Inland Mission International
Africa Inland Mission International, Inc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 99999
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Robert N. Kelly
James B. Travis
Jackson & Campbell, P.C.
1120 Twentieth Street, NW, South Tower
Washington, DC 20036
(202) 457-1600

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ● 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ● 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ◉ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
See attached.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ $337,338.00   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 11/16/06   SIGNATURE OF ATTORNEY OF RECORD   *Robert Kelly*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

28 U.S.C. §§ 1331, 1332, and 1391. Plaintiff sues Defendants for Breach of Contract, Violation of the District of Columbia Human Rights Act, Defamation, Unjust Enrichment, Conversion, Breach of Trust and a Demand for Accounting. Plaintiff is a resident of the District of Columbia. Defendants, respectively, are a New York corporation and an international organization located in Bristol, England. Jurisdiction is pled based on diversity of citizenship of the parties.