IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KRISTINA NEVIUS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06cv01965 |
| ) | Judge: Henry H. Kennedy |
| AFRICA INLAND MISSION ) | |
| INTERNATIONAL, INC., et al. ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT AFRICA INLAND MISSION INTERNATIONAL, INC.

COMES NOW the Plaintiff, Kristina Nevius, by her undersigned counsel, and hereby opposes the Motion to Dismiss of Defendant Africa Inland Mission International Inc. In support thereof, Ms. Nevius hereby adopts and incorporates, as if fully set forth herein, the accompanying Memorandum of Points and Authorities In Support of Plaintiff's Opposition.

WHEREFORE, for the foregoing reasons, Plaintiff Kristina Nevius respectfully requests this Court deny the Motion to Dismiss of Defendant Africa Inland Mission International Inc.

Dated: January 22, 2007

Respectfully submitted,

JACKSON AND CAMPBELL, P.C.

/ s /
_____
Robert N. Kelly (DC Bar #287276)
James B. Travis (DC Bar #486468)
1120 Twentieth Street, N.W.
South Tower
Washington, D.C., 20036-3437

>(202) 457-1600 voice
>(202) 457-1678 fax
>rkelly@jackscamp.com
>jtravis@jackscamp.com
>
>Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January, 2007, a true and accurate copy of the foregoing, attached proposed form of Order, and accompanying Memorandum of Points and Authorities was electronically served upon:

>Timothy R. Obitts, Esquire
>Gammon & Grange, P.C.
>8280 Greensboro Drive, 7th Flr.
>McLean, VA 22102

Dated: January 22, 2007

>Respectfully submitted,
>
>JACKSON AND CAMPBELL, P.C.
>
>/ s /
>_____
>Robert N. Kelly (DC Bar #287276)
>James B. Travis (DC Bar #486468)
>1120 Twentieth Street, N.W.
>South Tower
>Washington, D.C., 20036-3437
>(202) 457-1600 voice
>(202) 457-1678 fax
>rkelly@jackscamp.com
>jtravis@jackscamp.com
>
>Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KRISTINA NEVIUS )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>AFRICA INLAND MISSION )<br>INTERNATIONAL, INC., et al. )<br>)<br>    Defendants. ) | Case No. 1:06cv01965<br>Judge: Henry H. Kennedy |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT <u>AFRICA INLAND MISSION INTERNATIONAL, INC.</u>**

COMES NOW the Plaintiff, Kristina Nevius, by her undersigned counsel, and respectfully submits the instant Memorandum of Points and Authorities in support of her Opposition to the Motion to Dismiss of Defendant Africa Inland Mission International Inc.

## I. <u>Introduction</u>

The instant litigation arises out of the employment relationship between Defendant Africa Inland Mission International Inc. ("AIM, Inc.") and/or Defendant Africa Inland Mission International[1] and Plaintiff Kristina Nevius. Following the termination of her employment and other related acts by AIM, Inc., Ms. Nevius filed the complaint herein, seeking monetary damages against AIM, Inc. for Breach of Contract, Violation of the District of Columbia Human Rights Act, Defamation, Unjust Enrichment, and Conversion. Additionally, by her complaint, Ms. Nevius seeks a declaratory judgment directing AIM, Inc. to provide her a complete accounting of certain disputed funds.

---

[1]   Africa Inland Mission International, a foreign corporation headquartered in Bristol, England is also named as a defendant in the instant matter but may not yet have been served.

In response to Ms. Nevius's complaint, AIM, Inc. filed its Motion to Dismiss, inundating the Court with a lengthy recitation of AIM, Inc.'s history and organizational structure. In doing so, AIM, Inc. references numerous documents and materials, the relevance of which has yet to be determined.[2] As set forth below, however, AIM, Inc. fails to prove that it is entitled to the requested relief at this juncture of the litigation process and, therefore, its Motion to Dismiss must be denied.

## II. Statement of Facts

In or about June of 1998, Ms. Nevius entered a contract of employment with AIM, Inc. ("Contract")  In furtherance of the Contract and in reliance thereon, Ms. Nevius traveled to Namibia in September 1999 in order to serve in a mission located in Grootfontein.

Ms. Nevius began by establishing a soup kitchen to feed the poor and hungry black children. As she served in this mission, Ms. Nevius saw the great need of the children, many of whom were orphaned as well as poor and hungry. At first, her efforts were supported by the Apostolic Faith Mission Church (AFM Church). AFM Church is controlled by the white members and, although nominally integrated, requires separate services for its black worshipers. Soon, however, Ms. Nevius was told by AFM members not to bring the needy black children to the home and yard she was renting because it was located in the white part of town. As a result, Ms. Nevius decided to move to the mission home in the black part of town where she  could freely welcome the children.

---

[2]   Because discovery has yet to commence in this matter, Ms. Nevius has not yet had the benefit of obtaining and reviewing any relevant information and documents of AIM, Inc. or its agents or representatives.

With AIM's approval, Ms. Nevius pursued this goal of serving the poor black children of Grootfontein and designated the mission as "Mark 9:37," a reference to New Testament Gospel of St. Mark, Chapter 9 Verse 37.  Through her own fundraising (augmented in small part by AIM, Inc. fundraising), Ms. Nevius generated over $100,000.00 in donations to AIM, Inc. to fund the purchase and construction of a large home for the benefit of abused, neglected, and orphaned children, a home in which they would be fed, clothed, housed and educated into a new generation of leadership.  The Mark 9:37 project which raised the funds to purchase the land and construct the children's home was one of the most successful in Namibia among any of the missionaries of AIM.  Through Ms. Nevius' efforts, a home was built which began to serve 50 children in differing capacities.

The business model of AIM requires that each missionary, after screening and acceptance, contracts to give AIM, either from their own funds or from donors solicited by the missionary, monthly amounts sufficient to pay for the costs of the missionary's work, such as living expenses, food, insurance, travel, etc.  As part of this contract, the missionary agrees that AIM may deduct and retain as its own funds a percentage of all of the money derived from contributions by the missionary or by donors generated by the missionary's own activities.  AIM deducts 7% from all funds donated to AIM as a result of the missionary's efforts for the personal support of that missionary ("Support Funds").  AIM's business model also requires that missionaries who wish to undertake service projects requiring costs other than their own labor (food, equipment, housing, or buildings) must, by the same means described above, obtain sufficient funds donated to

AIM to fund the missionary's project. AIM deducts and retains 10% of all such monies ("Project Funds").

Such was the case for Ms. Nevius. Yet, despite her exemplary service in furtherance of the mission to which she was assigned, Ms. Nevius was wrongfully terminated from her employment by AIM, Inc.

### III. Legal Standard

It is well settled that on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint must be indulged the construction most favorable to the plaintiff and its allegations must be taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90, 96-97 (1974); *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S. Ct. 609, 614, 30 L. Ed. 2d 642, 649 (1972); *Jenkins v. McKeithen*, 395 U.S. 411, 421-422, 89 S. Ct. 1843, 1849, 23 L. Ed. 2d 404, 416-417 (1969).

The standards by which the propriety of such dismissal is judged are well-established. The Court must liberally construe the complaint "with all factual allegations deemed to be true and with doubts resolved in favor of the pleader." *Shear v. National Rifle Ass'n of America*, 196 U.S. App. D.C. 344, 606 F.2d 1251, 1253 (D.C. Cir. 1979) (citation omitted). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Schuler v. United States*, 199 U.S. App. D.C. 23, 617 F.2d 605, 608 (D.C. Cir. 1979).

The Federal Rules of Civil Procedure require only a generalized statement of the facts, "a short and plain statement of the claim showing that the pleader is entitled to

4

relief." *Church of Scientology v. Foley*, 205 U.S. App. D.C. 364, *6, 640 F.2d 1335 (D.C. Cir. 1980); *citing* Fed. R. Civ. P. 8(a). The liberal concepts of notice pleading do not require the pleading of legal theories. *Id.; citing Siegelman v. Cunard White Star*, 221 F.2d 189 (2d Cir. 1955). Indeed, absent prejudice to the defendant on the merits, a court may deny a motion to dismiss, or even one for summary judgment, on the basis of a legal theory never advanced by the plaintiff, so long as that theory is supported by the facts alleged. *Id.; citing Dotschay v. National Mutual Ins. Co.*, 246 F.2d 221, 223 (5th Cir. 1957); *International Distributing Corp. v. American District Telegraph Co.*, 569 F.2d 136, 139 (D.C. Cir. 1977).

Thus, the trial court is under a duty to determine if the allegations provide for relief on any possible theory. *Id.* at *7; *citing Quinonez v. National Ass'n of Secs. Dealers, Inc.*, 540 F.2d 824 (C.A. 5th, 1976); *Bonner v. Circuit Ct. of the City of St. Louis, Missouri*, 526 F.2d 1331 (C.A. 8th, 1975), *certiorari denied*, 424 U.S. 946; *U.S. v. Howell*, 318 F.2d 162 (C.A. 9th, 1963).

The presumption against a dismissal on the pleadings is intensified when, as with the non-defamation claims here, an asserted theory of liability presents novel legal issues that ordinarily should be resolved only after discovery and a trial on the merits. *Id.* at *7; *citing Shull v. Pilot Life Ins. Co.*, 313 F.2d 626, 629 (5th Cir. 1963). *See generally* 5 Wright & Miller, Federal Practice and Procedure, § 1357 (1969). These general principles governing motions to dismiss apply with equal force where the basis of the motion is an allegation that all of the claims found in a complaint are time barred. *Id.* at *8.

5

## IV. Argument

**A. Subject Matter Jurisdiction Is Proper As To All Claims Herein**

Each of Ms. Nevius' claims against AIM, Inc. can be decided by this Honorable Court based on neutral principles of law. Such principles apply to religious organizations and private individuals equally.

> The *First Amendment*, however, does not absolutely bar civil courts from reviewing the actions of religious organizations. *Bible Way Church, supra, 680 A.2d at 427*. As we have recognized, "the church is not above the law," *United Methodist Church v. White, 571 A.2d 790, 795 (D.C. 1990)*, and there are occasions on which civil courts may address the activities of religious organizations without violating the *First Amendment. Bible Way Church, supra, 680 A.2d at 427*. Specifically, **civil courts may resolve disputes involving religious organizations as long as the courts employ "neutral principles of law" and their decisions are not premised upon their "consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith."** *Jones v. Wolf, 443 U.S. 595, 602, 61 L. Ed. 2d 775, 99 S. Ct. 3020 (1979)* (citing *Maryland & Va. Churches v. Sharpsburg Church, 396 U.S. 367, 368, 24 L. Ed. 2d 582, 90 S. Ct. 499 (1970)* (Brennan, J., concurring)). Even where the civil courts must examine religious documents in reaching their decisions, the "neutral principles" approach avoids prohibited entanglement in questions of religious doctrine, polity, and practice by relying "exclusively upon objective, well-established concepts" of law that are familiar to lawyers and judges. *Jones v. Wolf, supra, 443 U.S. at 603*. The neutral principles approach is thereby "completely secular in operation." *Id.* (**emphasis added**)
>
> *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 354, 2005 D.C. App. LEXIS 49, 25 (D.C. App. 2005).

AIM, Inc. contends the First Amendment deprives this Court of subject matter jurisdiction "over what essentially is an ecclesiastical dispute" (AIM, Inc.'s Memorandum of Law in Support of Motion to Dismiss at 10). AIM, Inc., however, fails to explain how,

6

for instance, Ms. Nevius' claim for breach of contract materially differs from that of any other plaintiff who is not seeking damages against a religious organization. Ultimately, Ms. Nevius alleges and AIM, Inc. seemingly concedes, that a contract was formed between her and AIM, Inc. Further, Ms. Nevius contends that AIM, Inc. breached such contract, which such breach resulted in monetary damages to her.

The rules governing the formation, interpretation, and enforceability of contracts are entirely secular in nature and utterly devoid of religious content. *See id.* at 355. Such rules are objective, firmly established in case law, familiar to civil court judges, and have been deemed to be neutral principles of law' that civil courts may apply, in accord with the First Amendment, in resolving disputes involving religious organizations. *Id.*

Here, the factors to be considered in determining whether AIM, Inc. breached the contract between it and Ms. Nevius are the same as those that would be considered in any other breach of contract action: i.e. formation, breach, damages.

Likewise, each of the other claims of Ms. Nevius against AIM, Inc. involves objective, well-established, neutral principles of law and requires no further analysis of or inquiry into any ecclesiastical matters. As such, this Court clearly has subject matter jurisdiction over each of the claims presented by Ms. Nevius in the instant matter.

**B. Ms. Nevius' Claim For Damation as Well as Her Claims Under the District of Columbia Human Rights Act May Not Be Time-Barred**

As stated in the Complaint, AIM, Inc. has and continues to perpetuate false accusations against Ms. Nevius while at the same time refuses to disclose information necessary for Ms. Nevius to investigate same. Compl. ¶ 29. For these reasons alone, Ms. Nevius is unable to determine the exact date of each and every instance of defamation by AIM, Inc. As such, the determination of this issue is premature.

With regard to AIM, Inc.'s argument that Count II should be dismissed as the alleged discriminatory acts occurred outside the District of Columbia, such is not dispositive.  In *Matthews v. Automated Business Systems & Services, Inc.*, 558 A.2d 1175 (D.C. App. 1989), the Court reversed a lower court's dismissal of a claim for lack of subject matter jurisdiction, holding as follows:

> The trial court's conclusion that there was "not a sufficient nexus" to give it subject-matter jurisdiction was apparently based on a misreading of this court's decision in *Honig v. District of Columbia Office of Human Rights*, 388 A.2d 887 (D.C. 1978). In *Honig* we affirmed a decision by the Office of Human Rights (OHR) in which it declined to exercise jurisdiction over a discrimination claim against a foreign corporation brought by a petitioner whose District of Columbia contacts were minimal. The trial court read *Honig* as requiring persons who sue under the Human Rights Act to have a sufficient nexus with the District in order to provide a District of Columbia court with jurisdiction, and concluded that Matthews did not establish this nexus. **We hold that *Honig* does not require such a nexus before a plaintiff may bring an action in the courts under the Human Rights Act**.  (**emphasis added**)

*Id.* at 1181.

For these reasons, Ms. Nevius must be permitted to fully develop her claims against AIM, Inc. by and through discovery.

## Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff Kristina Nevius respectfully requests this Court deny the Motion to Dismiss of Defendant Africa Inland Mission International Inc.

Dated: January 22, 2007  Respectfully submitted,

JACKSON AND CAMPBELL, P.C.

*/ s /*
_____
Robert N. Kelly (DC Bar #287276)
James B. Travis (DC Bar #486468)
1120 Twentieth Street, N.W.
South Tower
Washington, D.C., 20036-3437
(202) 457-1600 voice
(202) 457-1678 fax
rkelly@jackscamp.com
jtravis@jackscamp.com

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KRISTINA NEVIUS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06cv01965 |
| | ) | Judge: Henry H. Kennedy |
| AFRICA INLAND MISSION | ) | |
| INTERNATIONAL, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Upon consideration of the Motion to Dismiss of Defendant Africa Inland Mission International Inc., the opposition thereto, and the entire record herein, it is, this _____ day of _____ 20___, hereby

ORDERED, that the Motion be, and the same hereby is, DENIED.

SO ORDERED.

_____
Judge Henry H. Kennedy, Jr.

Copies to:

Robert N. Kelly, Esquire
James B. Travis, Esquire
Jackson & Campbell, P.C.
1120 Twentieth Street, N.W. – South Tower
Washington, D.C., 20036-3437

Timothy R. Obitts, Esquire
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Flr.
McLean, VA 22102